Nathan L. DREW, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17611.

United States Court of Appeals
District of Columbia Circuit.

Argued June 18, 1963.

Decided Feb. 13, 1964.

---

Mr. Harold Leventhal, Washington, D. C. (appointed by this court), for appellant.

Mr. Robert A. Levetown, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Barry Sidman, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and WASHINGTON and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge.

This is an appeal from a conviction in the District Court on one count of robbery and one count of attempted robbery (22 D.C.Code §§ 2901 and 2902). Appellant moved, both before and at the commencement of trial, to compel separate trials of the two charges; and, after verdict, he moved for a new trial because of prejudice asserted to have occurred in, and by reason of, the joint trial. The failure to grant this relief is said on this appeal to be a source of reversible error.[1]

Rule 8(a) of the Federal Rules of Criminal Procedure, set forth in the margin,[2] provides for permissible joinder of offenses in certain specified cases. Rule 14 provides:

"If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." [3]

Thus, even though the joinder is permissible under Rule 8(a), if the defendant makes a timely motion under Rule 14 and shows prejudice, the court should either order an election by the Government or grant separate trials.[4] Here the joinder in the indictment under Rule 8(a) was permissible since the two crimes are similar in nature. Having in fact been tried together over the timely protest of appellant before, during, and after the trial, our inquiry now is as to whether the trial record indicates sufficient possibility of prejudice by reason of such joinder for trial as to require reversal. We believe that it does.

1. We do not find it necessary to consider the error alleged in points two and three of appellant's brief.

2. Rule 8(a) reads as follows:
"Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

3. Rules 8(a) and 14 are, for present purposes, similar to former § 557 of Title 18 U.S.Code (Rev.Stat. § 1024 (1875)), which governed joinder before promulgation of the Rules. For that reason, we consider cases decided under § 557 relevant to our determination. See Dunaway v. United States, 92 U.S.App.D.C. 299, 300 n. 5, 205 F.2d 23, 24 n. 5 (1953).

4. This proposition seems to us to have been clearly articulated in the following: Dunaway v. United States, 92 U.S.App. D.C. 299, 300, 205 F.2d 23, 24 (1953); Peckham v. United States, 93 U.S.App. D.C. 136, 140, 210 F.2d 693, 697–98 (1953); Chambers v. United States, 112 U.S.App.D.C. 240, 301 F.2d 564 (1962).

## I

■■ The justification for a liberal rule on joinder of offenses appears to be the economy of a single trial. The argument against joinder is that the defendant may be prejudiced for one or more of the following reasons: (1) he may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find. A less tangible, but perhaps equally persuasive, element of prejudice may reside in a latent feeling of hostility engendered by the charging of several crimes as distinct from only one. Thus, in any given case the court must weigh prejudice to the defendant caused by the joinder against the obviously important considerations of economy and expedition in judicial administration.

This question has been considered many times by the federal courts, the state courts, and the courts of England.[5] In Queen v. King, [1897] 1 Q.B. 214, 216, Hawkins, J., said:

"* * * I pause here to express my decided opinion that it is a scandal that an accused person should be put to answer such an array of counts containing, as these do, several distinct charges. Though not illegal, it is hardly fair to put a man upon his trial on such an indictment, for it is almost impossible that he should not be grievously prejudiced as regards each one of the charges by the evidence which is being given up on the others."

In Pointer v. United States, 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208 (1894), the Supreme Court addressed itself to this problem in the course of holding that a defendant charged in an indictment with four counts involving the murder of two persons on the same day, at the same place, and with the same kind of instrument, was not prejudiced by the joinder, inasmuch as the proof of each crime would have been relevant in a separate trial of the other. The Court, 151 U.S. at pages 403–404, 14 S.Ct. at page 412, 38 L.Ed. 208, said:

"While recognizing as fundamental the principle that the court must not permit the defendant to be embarrassed in his defense by a multiplicity of charges embraced in one indictment * * *, and while conceding that regularly or usually an indictment should not include more than one felony, the authorities concur in holding that a joinder in one indictment, * * * of different felonies, at least of the same class or grade, and subject to the same punishment * * * does not, in every case, by reason alone of such joinder, make it the duty of the court, upon motion of the accused, to compel the prosecutor to elect upon what one of the charges he will go to trial. * * * If it be discovered at any time during a trial that the substantial rights of the accused may be prejudiced by a submission to the same jury of more than one distinct charge of felony among two or more of the same class, the court * * * can compel an election by the prosecutor. * * *"

In McElroy v. United States, 164 U.S. 76, at 79–80, 17 S.Ct. 31, at 32, 41 L.Ed. 355 (1896), the Court said:

"* * * in our opinion, they [the indictments] were not for two or more acts or transactions of the same class of crimes or offenses. which might be properly joined, because they were substantive offenses, separate and distinct, complete in themselves and independent of each other, committed at different times. and not provable by the same evidence. In cases of felony, the multi-

5. See Comment, 37 COLUM.L.REV. 1027 (1937).

plication of distinct charges has been considered so objectionable as tending to confound the accused in his defense, or to prejudice him as to his challenges, in the matter of being held out to be habitually criminal, in the distraction of the attention of the jury, or otherwise, that it is the settled rule in England and in many of our States, to confine the indictment to one distinct offense or restrict the evidence to one transaction. * * * *[W]e do not think the statute * authorizes the joinder of distinct felonies, not provable by the same evidence and in no sense resulting from the same series of acts." (Emphasis added.)

Our own court, in Kidwell v. United States, 38 App.D.C. 566, at 570 (1912), said:

"It is doubtful whether separate and distinct felonies, involving different parties, not arising out of the same transaction or dependent upon the same proof, should ever be consoli-

---

* The statute referred to is Rev.Stat. § 1024 (1875). See footnote 3 supra.

6. The appellant contends that he was confounded in his defense in that he desired to take the stand and testify as to the robbery, but did not want to testify as to the attempted robbery. Whether this is the kind of embarrassment with which the rule is concerned, we need not presently consider. See Dunaway v. United States, supra.

7. See 1 WIGMORE, EVIDENCE §§ 192–94 (3d ed. 1940); McCORMICK, EVIDENCE § 157; 1 UNDERHILL, CRIMINAL EVIDENCE §§ 205–12 (5th ed. 1956); UNIFORM RULE OF EVIDENCE 55; People v. Molineux, 168 N.Y. 264, 61 N.E. 286, 62 L.R.A. 193 (1901). Perhaps the leading authority in this jurisdiction is the concurring opinion of Judge Stephens in Martin v. United States, 75 U.S.App.D.C. 399, 401, 127 F. 2d 865, 867 (1942). See also Fairbanks v. United States, 96 U.S.App.D.C. 345, 226 F.2d 251 (1955); Pyle v. United States, 81 U.S.App.D.C. 209, 156 F.2d 852 (1946); Bracey v. United States, 79 U.S.App.D.C. 23, 142 F.2d 85, cert. denied, 322 U.S. 762, 64 S.Ct. 1274, 88 L. Ed. 1589 (1944); cf. Hansford v. United States, 112 U.S.App.D.C. 359, 303 F.2d 219 (1962). In Boyer v. United States,

---

dated. But it should not be permitted where the crimes charged are of such a nature that the jury might regard one as corroborative of the other, when, in fact, no corroboration exists."

Considering our disposition of the present case, we may put aside the question of whether appellant was embarrassed or confounded in presenting his defenses [6] and turn to the question of whether he was prejudiced by the possibility that the jury used the evidence of the one crime to convict of the other or cumulated the evidence to find guilt under both charges.

## II

It is a principle of long standing in our law that evidence of one crime is inadmissible to prove *disposition* to commit crime, from which the jury may infer that the defendant committed the crime charged.[7] Since the likelihood that juries will make such an improper inference is high,[8] courts presume preju-

---

76 U.S.App.D.C. 397, 132 F.2d 12 (1942), reversing the conviction, this court said:

"No doubt the alleged fact that a man committed a crime on another occasion tends to show a disposition to commit similar crimes. But when the prior crime has no other relevance than that, it is inadmissible. Its tendency to create hostility, surprise, and confusion of issues is thought to outweigh its probative value. The law seeks 'a convenient balance between the necessity of obtaining proof and the danger of unfair prejudice.'"

Admissibility of other crimes evidence for purposes other than proof of disposition is treated below.

8. Underhill, in discussing the admissibility of evidence of other crimes, states that

"The large majority of persons of average intelligence are untrained in logical methods of thinking, and are therefore prone to draw illogical and incorrect inferences, and conclusions without adequate foundation. From such persons jurors are selected. They will very naturally believe that a person is guilty of the crime with which he is charged if it is proved to their satisfaction that he has committed a similar offense, or any offense of an equally

dice and exclude evidence of other crimes unless that evidence can be admitted for some substantial, legitimate purpose.[9] The same dangers appear to exist when two crimes are joined for trial, and the same principles of prophylaxis are applicable.

 Evidence of other crimes is admissible when relevant to (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other, and (5) the identity of the person charged with the commission of the crime on trial.[10] When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value.

 If, then, under the rules relating to other crimes, the evidence of each of the crimes on trial would be admissible in a separate trial for the other, the possibility of "criminal propensity" prejudice would be in no way enlarged by the fact of joinder. When, for example, the two crimes arose out of a continuing transaction or the same set of events, the evidence would be independently admissible in separate trials. Similarly, if the facts surrounding the two or more crimes on trial show that there is a reasonable probability that the same person committed both crimes due to the concurrence of unusual and distinctive facts relating to the manner in which the crimes were committed,[11] the evidence of one would be admissible in the trial of the other to prove identity. In such cases the prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials.[12]

heinous character. And it cannot be said with truth that this tendency is wholly without reason or justification, as every person can bear testimony from his or her experience that a man who will commit one crime is very liable subsequently to commit another of the same description."

1 UNDERHILL, CRIMINAL EVIDENCE § 205 (5th ed. 1956). Wigmore says:

"The natural and inevitable tendency of the tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge. * * * These reasons of auxiliary policy * * *, directed to prevent the risks of reaching verdicts through insufficient evidence, have operated to exclude that which is in itself relevant."

1 WIGMORE, EVIDENCE § 194 (3d ed. 1940).

9. See Martin v. United States, supra (concurring opinion); Boyer v. United States, supra; Whiteman v. State, 119 Ohio St. 285, 164 N.E. 51, 63 A.L.R. 595 (1928); 1 WIGMORE, EVIDENCE § 194 (3d ed. 1940); McCORMICK, EVIDENCE § 157; 1 UNDERHILL, CRIMINAL EVIDENCE § 205 (5th ed. 1956).

10. These are variously stated by the different authorities and this list is not necessarily all-inclusive. These are, however, the major exceptions. See 2 WIGMORE, EVIDENCE §§ 300–371 (3d ed. 1940) and cases and authorities cited in footnote 9 supra. Additionally, in certain situations, evidence of prior convictions may be utilized for purposes of impeachment.

11. McCormick states that "the device used must be so unusual and distinctive as to be like a signature." McCORMICK, EVIDENCE § 157. See also Martin v. United States, supra.

12. That the admissibility of the other crimes evidence in separate trials is a highly significant factor in determining whether joinder is prejudicial is made clear by an examination of many cases affirming a refusal of the trial judge to require severance or an election. See, e. g., Nestlerode v. United States, 74 App.D.C. 276, 122 F.2d 56 (1941); McNeil v. United States, 66 App.D.C. 199, 85 F.2d 698 (1936); Lee v. United States, 37 App.D.C. 442 (1911); United States v. Morabette, 119 F.2d 986 (7th Cir. 1941). In each case the court indicated that evidence of one of the crimes would have been admissible in a separate prosecution of the other.

### III

 The federal courts, including our own, have, however, found no prejudicial effect from joinder when the evidence of each crime is simple and distinct, even though such evidence might not have been admissible in separate trials under the rules just discussed.[13]

This rests upon the assumption that, with a proper charge, the jury can easily keep such evidence separate in their deliberations and, therefore, the danger of the jury's cumulating the evidence is substantially reduced. In the leading case of United States v. Lotsch, 102 F.2d 35 (2d Cir.), cert. denied, 307 U.S. 622, 59 S.Ct. 793, 83 L.Ed. 1500 (1939), Judge Learned Hand said (102 F.2d at p. 36):

> "There is indeed always a danger when several crimes are tried together, that the jury may use the evidence cumulatively; that is, that, although so much as would be admissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all. This possibility violates the doctrine that only direct evidence of the transaction charged will ordinarily be accepted, and that the accused is not to be convicted because of his criminal disposition. Yet in the ordinary affairs of life such a disposition is a convincing factor, and its exclusion is rather because the issue is practically unmanageable than because it is not rationally relevant. When the accused's conduct on several separate occasions can properly be examined in detail, the objection disappears, and the only consideration is whether the trial as a whole may not become too confused for the jury. * * * Here we can see no prejudice from joining the three charges: the evidence as to each was short and simple; there was no reasonable ground for thinking that the jury could not keep separate what was relevant to each. The joinder was therefore proper * * *."

Judge Hand recognizes the possibility, of course, that the jury may misuse the evidence, no matter how simple and separable; his position is merely that the possibility is somewhat reduced. However, the possibility of the jury's becoming hostile or inferring guilt from belief as to criminal disposition is just as substantial. For this reason great care must be exercised to protect the defendant from this possibility when joinder is tolerated under this theory.[14]

 In summary, then, even where the evidence would not have been admissible in separate trials, if, from the na-

---

13. United States v. Lotsch, 102 F.2d 35 (2d Cir.), cert. denied, 307 U.S. 622, 59 S. Ct. 793, 83 L.Ed. 1500 (1939); Langford v. United States, 106 U.S.App.D.C. 21, 268 F.2d 896 (1959); Dunaway v. United States, supra; Maurer v. United States, 95 U.S.App.D.C. 389, 222 F.2d 414 (1955); United States v. Liss, 137 F.2d 995 (2d Cir.), cert. denied, 320 U.S. 773, 64 S.Ct. 78, 88 L.Ed. 462 (1943).

14. In Dunaway v. United States, supra, 205 F.2d at pp. 26–27, we stated the rule as follows:
 "This leaves only the question whether reversal is required because, in the language of Kidwell v. United States, supra, 'the crimes charged are of such a nature that the jury might regard one as corroborative of the other, when, in fact, no corroboration exists.' The evidence of the prosecution in support of each of the finger print cases was not lengthy. It was simple. It was unlikely to cause confusion. The evidence as to each charge was readily referable to the crime with respect to which it was introduced. * * * It is unlikely the verdicts of the jury in any of the cases could have turned upon evidence applicable to another. While we are not ready to subscribe to the views expressed in United States v. Lotsch, in contrast with those set forth in Kidwell v. United States, the latter should not be construed to require reversal *where the evidence is so separable and distinct with respect to each crime, and so uninvolved, and the offenses are of such nature, that the likelihood of the jury having considered evidence of one as corroborative of the other is insubstantial.*" (Emphasis added)

ture of the crimes charged, it appears that the prosecutor might be able to present the evidence in such a manner that the accused is not confounded in his defense and the jury will be able to treat the evidence relevant to each charge separately and distinctly, the trial judge need not order severance or election at the commencement of the trial. If, however, it appears at any later stage in the trial that the defendant will be embarrassed in making his defense or that there is a possibility that the jury will become or has become confused, then, upon proper motion, the trial judge should order severance.

## IV

Turning now to the case at hand, a detailed exposition of the facts is necessary. The robbery, committed at a neighborhood store belonging to High's Dairy Products Corp., occurred on July 27, 1962. The sales clerk testified that a Negro male,[15] wearing sunglasses,[16] entered the store. After a short delay the clerk approached the customer and asked if she could help him. He replied: "This is a holdup; I want your money, all of it." When the witness hesitated, he said: "Get it," and pulled a gun part of the way out of his pocket. She gave him the money, and he proceeded to leave the store as another customer entered.

The attempted robbery occurred at a different High's neighborhood store on August 13, 1962 (some two and one-half weeks after the robbery). The sales clerk testified as follows: While she was alone in the store a Negro male entered the store dressed in a coat, cap, and sunglasses.[17] When she asked to help him, he asked for a bag of peanuts. She asked whether he wanted the five or ten cent

size, and he replied "five." He then said: "Give me all the money," and she replied: "If you want it, come and get it." He repeated himself several times, and each time she repeated her statement. Finally he said: "You are not going to give me that money?" and she replied negatively. At that point a customer entered the store, and appellant left hastily. The clerk testified that she was not threatened in any way. The police apprehended appellant in the vicinity of the store some twenty-five minutes later and returned to the store where the sales clerk identified him as the person who had attempted to rob her.

These facts do not show such a close similarity in the manner of committing the crimes as would make them admissible in separate trials. Viewing the record in its best light, the essential similarity that appears is the nature of the offense, the fact that both offenses were committed against High stores, and the fact that the offender in both instances was a Negro wearing sunglasses. We do not think that these similarities in the manner in which the offenses were committed are sufficient to support a finding of reasonable probability that the two offenses were committed by the same person, from which the jury could be asked to infer that the person was the appellant.[18] This conclusion is buttressed by other factors. In the robbery, the assailant, at the first sign of non-compliance, threatened the clerk with a gun. In the attempted robbery, there was no such threat of violence; in fact, the dragon seems to have been a most reluctant one indeed. This circumstance could raise a significant doubt as to whether appellant was involved in both crimes. A fundamental difference be-

---

15. In a lineup seventeen days later, and again at trial, this witness identified appellant as the offender.

16. In the Government's brief the appellant is referred to as having been dressed in a hat and light overcoat. However, the testimony to which the Government refers us on this point concerns appellant's dress at the time of the lineup.

There is nothing in the record to show that he was so dressed at the time of the robbery.

17. She identified appellant as the offender some thirty minutes after the offense and again at trial.

18. See United States v. Magee, 7 Cir., 261 F.2d 609 (1958).

tween two persons contemplating crimes of this character would be the degree to which each was prepared to use force to achieve his objective. Thus it is that the testimony about the use of the pistol in the one case, and not in the other, takes on enhanced significance. Moreover, neighborhood stores of the High's variety are particularly vulnerable to this kind of crime. They are usually staffed with only one or two female clerks, and are natural targets for both professional and non-professional bandits. These factors render less significant, for these purposes, the fact that both crimes were committed against High's stores, that they occurred on a summer afternoon when no customers were in the store, and that the intruder wore sunglasses. These circumstances all fit into an obvious tactical pattern which would suggest itself to almost anyone disposed to commit a depredation of this sort.

Nor did the two offenses arise out of the same transaction, series of transactions, or continuing state of affairs so

that the evidence could have come in under the fourth exception stated above. In short, we cannot find absence of prejudice on the ground that the evidence would have been admissible in separate trials.[19]

This is not the end of the matter, however. We must still determine whether this case falls within the "simple and distinct" test as formulated in the *Dunaway* case, *supra* Note 14. As pointed out above, the very essence of this rule is that the evidence be such that the jury is unlikely to be confused by it or misuse it. It is not mere conjecture to say that the jury may have been confused in this case. A perusal of the record shows that witnesses' responses at times indicated confusion as to which crime counsel were referring to in their questions; the two crimes were repeatedly referred to as of the same order; and the prosecutor in his summation not unnaturally lumped the two together on occasion in his discussion of the evidence.[20] These lapses do not appear to have been purposeful, but lack of improper motivation

19. Compare Boyd v. United States, 142 U.S. 450 at 458, 12 S.Ct. 292 at 295, 35 L.Ed. 1077 (1892); Martin v. United States, *supra* (concurring opinion); Bracey v. United States, *supra*; Payne v. United States, 111 U.S.App.D.C. 94, 294 F.2d 723, cert. denied, 368 U.S. 883, 82 S.Ct. 131, 7 L.Ed.2d 83 (1961); United States v. Magee, *supra*; Boyer v. United States, *supra*.

20. A few examples will illustrate the point.
"Q. [by Government counsel] Now, can you tell the ladies and gentlemen of the jury and His Honor what this conversation was, what was said? A. [by Detective Rogers] Well, this particular conversation, we asked him if he had did this robbery in the attempt, and he said he did, but there would be no need for us to write it down as when he got to Court he would deny it.
"Q. Did you ask him about both the robbery on July 27th and the attempt on August 13th? A. That is right.
"Q. Was his denial—was the statement made with reference to both of them? A. Both, both the attempt and the robbery."

\* \* \* \* \*
"Q. [by Government counsel] Now who else was in the store at that time? A. [by Officer Olds] To the best of my knowledge, my partner, Private Young, and Mrs. Ross [the complaining witness]. \* \* \* Well, the best I can remember, I believe there was somebody working there that day, she was in the back when all this happened, and I believe she came out, I am not sure. \* \* \* I might be mixed up with the other High's store, I am not sure."
\* \* \* \* \*
In closing argument, the prosecutor said: "We hear nothing more of the defendant Drew until August 13th. We do know that Miss Waley quit High's because it was too dangerous. But on August—and whether she quit before or after August 13th is irrelevant, but on August 13th about 5:45 Mrs. Hughes, seated in the courtroom, is working alone in a different High's store, at 5119 Grant Street, and in walks the defendant, and she identified him, and he says: Give me all your money, and I think my recollection is that at this time, as well as the time on July 27th,

94

does not lessen their impact on the jury. If separate crimes are to be tried together—and we are not to be understood as intimating any conclusion that this can never, as a practical matter, be successfully undertaken—both court and counsel must recognize that they are assuming a difficult task the performance of which calls for a vigilant precision in speech and action far beyond that required in the ordinary trial. The confusion here was probably the result of the superficial similarity of the two

crimes and the way in which they were committed.[21] On this record, we cannot say that the jury probably was not confused or probably did not misuse the evidence, as Judge Hand was able to hold in *Lotsch.*

For these reasons we find that there was prejudice in the joinder and the court below should have granted separate trials. The conviction is reversed and the case is remanded.

It is so ordered.

---

when he was wearing sunglasses for the robbery, he said, give me all your money.

"This Mrs. Hughes, however, does not react as did Miss Waley. She said: If you want it, you have to come and get it. And he doesn't display any gun."

And:

"At this point the defendant denied the offense, and he has given a false name, not even his given name, Nathan Drew, and he is advised that he is charged with the robbery, [rather] the attempted robbery, which has just taken place minutes before. * * *

"Now, also, of course, you heard the witnesses who identified the man who robbed them, and attempted to rob them, here in court.

"Well, she identifies him, and he is charged. What does he say? He says: I did it. And that is not unusual that he should say that. He has been identified, and has been arrested fifteen minutes, not even that much, some minutes after the robbery, [sic—attempted robbery] and he immediately thereafter, he is identified as the fellow that pulled the job on July 27th. * * *

"The case, I think, developed that there are clearcut identifications by people, who are residents of the community, who have absolutely no reason to say something which they do not mean to say, and are not sincere about, or which is not true, and this is not just one random identification, but these are clearcut studied identifications, of eye witness identifications of that man, by people who have had a clear opportunity to see him, and who are firm in their position that this is the man. * * *

"Their identification is clear and undisputed, and we can rest the case on

that line, but we don't have to, because there is a confession.

"Now, there is an issue in this case, as in most cases, as to whether any statement made by the defendant was voluntary. There is nothing that was produced to you, testimony before you, to the effect that the statement was not voluntarily made. It was brief, abbreviated, and you might even say it was short, but we have a confession.

"No, I don't want to be presumptuous because it is the Government's burden to prove a case beyond a reasonable doubt, but in a case where there are two crimes, where there are several witnesses who identify the defendant clearly—" (Referring to the identification testimony as a whole could have been confusing because the identification evidence connected with the robbery was significantly weaker than that connected with the attempted robbery.)

And:

"I do not think that you may, based on her [alibi witness for defendant] testimony, and based upon the impossible conflict between it and *all the witnesses for the Government*, you will find this inherently incredible." (Emphasis added)

21. The Government strenuously argues that the two crimes were sufficiently similar to come within the "identity" exception to the "other crimes" rule. However, once that argument has been rejected, the "similarity" point cuts the other way. Every suggestion at the trial that the two crimes were closely parallel increases the liklihood that the jury may become confused or misuse the evidence. The more similar the crime, the more careful the trial court and Government counsel must be to keep the evidence separated.