Michael H. BLAKENEY, Appellant,

v.

UNITED STATES, Appellee.

James B. NELSON, Appellant,

v.

UNITED STATES, Appellee.

Nos. 93–CF–401, 93–CF–457.

District of Columbia Court of Appeals.

Argued Nov. 21, 1994.

Decided Jan. 19, 1995.

Karen J. Krueger, for appellant Blakeney.

Craig Dean Katz, for appellant Nelson.

Glen L. Kirschner, Asst. U.S. Atty., with whom Eric H. Holder, Jr., U.S. Atty. and John R. Fisher, Thomas J. Tourish, Jr., Shanlon Wu, and Linda I. Marks, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN and KING, Associate Judges, and PRYOR, Senior Judge.

FERREN, Associate Judge:

On September 18, 1992 a jury convicted appellants Nelson and Blakeney of unlawful possession with intent to distribute cocaine. D.C.Code § 33–541(a)(1) (1993 Repl.). Nelson was also convicted of unlawful possession of drug paraphernalia. D.C.Code § 33–603(a) (1993 Repl.). Nelson was sentenced to a mandatory term of seven to twenty-one years in prison for possession with intent to distribute, and to one month in prison for possessing drug paraphernalia, to be served concurrently. Blakeney was sentenced to a mandatory term of four to twelve years incarceration.

In this appeal, Blakeney contends that the trial court erred by (1) admitting in evidence a pager found on Blakeney at the time of his arrest, and by (2) permitting the government's expert to testify as to the use of pagers in drug transactions. Blakeney also argues that (3) there was insufficient evidence to convict him of aiding and abetting possession with intent to distribute cocaine.

Nelson maintains that (1) the trial court erred by restricting cross-examination of the government's expert witness; (2) his sentence was illegal; and (3) the admission, solely against Blakeney, of the pager, as well as the expert testimony about the use of pagers in drug distribution, had a "spillover effect" which resulted in unfair prejudice against him. We affirm as to both appellants.

## I.

The government presented the following evidence at trial. United States Park Police Officer John Dowd obtained a search warrant for apartment # 3 at 1814 North Capitol Street, N.W. Soon thereafter, on June 26, 1992, at approximately 5:15 p.m., Officer Dowd and FBI special agent John Kerr set up an observation post to monitor the front of 1814 North Capitol Street. It was light outside and Officer Dowd had an unobstructed view of the apartment building.

On four occasions between 5:15 p.m. and 6:00 p.m. Officer Dowd saw appellant Nelson walk to a tree located along the curb, bend down next to the tree, and then appear to put something inside his waistband. The tree was approximately ten feet to the north of 1814 North Capitol Street. According to Officer Dowd's testimony, after bending down next to the tree, Nelson would walk southbound on North Capitol Street with an unidentified person and exchange a small item taken from his waistband for money.

Appellant Blakeney walked "in front of [or] behind" Nelson during these exchanges and looked up and down North Capitol Street while the exchanges were taking place. After each sale, Blakeney would meet Nelson in front of 1814 North Capitol, and Nelson would give Blakeney some cash. Just before 6:00 p.m., Officer Dowd saw Nelson give Blakeney a large sum of money, and Blakeney then went into the building at 1814 North Capitol. At approximately 6:00 p.m., Dowd radioed to his fellow officers to execute the search warrant for 1814 North Capitol # 3; he also told them to stop Nelson. In the meantime, Officer Ed Brosch searched the area near the tree and recovered a cardboard box containing a large amount of debris and a "carefully folded" piece of brown paper that contained a green ziplock bag. The bag held a "large chunk" of a substance that a Drug Enforcement Administration (DEA) analysis later established was 519 milligrams of cocaine base.

When Nelson was detained, he told the police that he lived in apartment # 3 at 1814 North Capitol Street and that he was unemployed. Blakeney was stopped in a hallway just outside one of the bedrooms in apartment # 3. Blakeney confirmed that he "stayed" in the bedroom closest to where he had been detained. Officer Dowd, who had left his observation post and entered the apartment, recognized Blakeney as the person he had seen near Nelson during the transactions; he also recognized Blakeney as the person who had received money from Nelson. Blakeney told the police that he was unemployed and gave his address as 6212 Georgia Avenue, Northwest.

Inside dresser drawers in Blakeney's bedroom, the police found numerous empty yellow and blue ziplock bags, a small straw, and three small ziplocks that contained what appeared to be crack cocaine. A later DEA analysis showed that the three small ziplocks did not contain a controlled substance. The straw, however, had traces of cocaine on it. An inoperable .25 caliber Raven semi-automatic pistol was recovered from between the mattress and the box spring in the same bedroom. The police also found photographs there depicting Blakeney, Nelson, and the two of them together, as well as three "legal papers" with Blakeney's name on them.

The police recovered a pager and $690 from Blakeney's pockets. The $690 was comprised of three $100 bills, one $50 bill, fifteen $20 bills, three $10 bills, and two $5 bills. A total of $476 was recovered from Nelson, comprised of two $50 bills, eleven $20 bills, nine $10 bills, eleven $5 bills, and eleven $1 bills.

Lieutenant Ronald Schmidt, an expert in the handling and distribution of narcotics, testified for the government, opining that (1) it is common for one person to do the "hand to hand" transfer while someone else handles the money; (2) street drug sellers often sell from a "stash" and frequently use trash receptacles for their stashes; (3) the "money man" may keep the money on himself or in a stash, and then take the cash into a house or apartment after a certain amount has been received; and (4) street sales primarily generate $5, $10, and $20 bills. Lieutenant Schmidt also testified that pagers are commonly used in the drug trade; they enable sellers to contact suppliers in order to resupply inventory.

## II.

### A.

Blakeney contends the trial court abused its discretion by admitting in evidence the pager found in his pocket at the time of his arrest. He argues, first, that the pager should not have been admitted because it was not relevant and, second, that even if relevant the pager should have been excluded as more prejudicial than probative.

■ "The determination of the relevance of proffered evidence is committed to the sound discretion of the trial court." *Street v. United States*, 602 A.2d 141, 143 (D.C.1992). In weighing the admissibility of particular evidence, the trial court must keep in mind that "[t]he evidence must have some connection with the defendant or the crime with which he is charged and should not be admitted if the connection is too remote or conjectural." *Burleson v. United States*, 306 A.2d 659, 661 (D.C.1973). On appeal, "[a]n evidentiary ruling by a trial judge on the relevance[e] of a particular item ... will be upset ... only upon a showing of grave abuse." *Roundtree v. United States*, 581 A.2d 315, 328 (D.C.1990).

Although this court has not ruled directly on the relevance of a pager to the crime of possession with intent to distribute, we have repeatedly recognized that pagers are associated with the distribution of drugs. *See, e.g., Lowman v. United States*, 632 A.2d 88, 99 n. 14 (D.C.1993) (possession of money and a beeper "worth a million" as incriminating evidence) (Schwelb, J., dissenting in part); *Morton v. United States*, 620 A.2d 1338, 1340 (D.C.1993) (guns and beepers are "evidence of distribution"); *Mack v. United States*, 570 A.2d 777, 785 (D.C.1990) (evidence that defendant was carrying money and a beeper "at least highly suspicious").

■ Here, the discovery of the pager occurred almost immediately after the police had directly observed Blakeney participate in the sale of cocaine. Officer Dowd testified that between 5:15 and 6:00 p.m. on June 26, 1992, he had observed (1) Blakeney walking near Nelson and acting as a lookout while Nelson engaged in four "hand to hand" drug sales; (2) after each of these transactions, Nelson had met with Blakeney in front of 1814 North Capitol St. and had given him money; and (3) just before 6:00 p.m. Nelson had given Blakeney a large sum of money.

Minutes later, police officers stopped Blakeney while executing a search warrant inside apartment # 3 at 1814 North Capitol Street. At the time he was stopped, Blakeney had a pager in his pocket, as well as $690 comprised of large and small bills. In light of Lieutenant Schmidt's expert testimony that pagers are commonly used in the drug trade, as well as this court's recognition in previous cases that pagers are often associated with the distribution of illegal drugs, and given the fact that the pager was found in Blakeney's pocket only minutes after he had been seen receiving money from Nelson—money which Nelson had apparently been given in exchange for drugs—we cannot say the trial judge erred in finding the pager relevant to the government's theory that Blakeney had aided and abetted Nelson in the distribution of cocaine.

#### B.

■ Blakeney also contends that, even if the pager was relevant it should have been excluded as more prejudicial than probative. Like relevance, the weighing of probative value against the danger of unfair prejudice "is a decision committed to the sound discretion of the trial court." *Hawkins v. United States*, 482 A.2d 1230, 1232 (D.C.1984). Thus, the trial court must determine, in light of the facts of each case, whether the evidence sought to be admitted is "likely to sway improperly the jury's deliberations." *Street*, 602 A.2d at 144. Appellant argues that admission of the pager unfairly prejudiced the jury because it was "predisposition evidence," meaning evidence of "other crimes."

■ These arguments are ill-suited to the facts of this case. The pager itself is not evidence of participation in any crime and therefore is not excludable under *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964).[1] Nor does possession of the pager

---

1. Appellant cites the dissenting opinion in the recent case of *United States v. Brown*, 305 U.S.App.D.C. 1, 12, 16 F.3d 423, 434 (1994) (Edwards, J., dissenting), *cert. denied,* — U.S. ——, 115 S.Ct. 257, 130 L.Ed.2d 178 (1994), for the proposition that a pager should not have been admitted because it was evidence of "other crimes" and therefore not relevant to show intent

to distribute. The facts of that case, however, are significantly different from the facts here. In *Brown*, 305 U.S.App.D.C. at 9, 16 F.3d at 431, the court admitted a pager in evidence to show intent to distribute with regard to crimes which had taken place three months before the pager was seized. Here, the pager was found on appellant only a few minutes after he had been ob-

inherently reflect a prior bad act similarly excludable under the extension of *Drew* explained in *Ali v. United States,* 581 A.2d 368, 375 (D.C.1990) (citing *Jones v. United States,* 477 A.2d 231, 237 (D.C.1984)), *cert. denied,* 502 U.S. 893, 112 S.Ct. 259, 116 L.Ed.2d 213, (1991). In any event, under the circumstances of this case, the fact that Blakeney was carrying a pager does not suggest, nor was it introduced to show, that he was somehow predisposed to distribute drugs. Rather, in this case, the pager simply augments the picture of Blakeney as actively participating in the distribution of drugs at the time the pager was seized. Given the close temporal relationship between Officer Dowd's observations of Blakeney's acting in concert with Nelson to sell cocaine, and the nearly contemporaneous discovery of the pager and $690 in Blakeney's pocket, we cannot say the trial court abused its discretion in finding that the pager's probative value outweighed any danger that it would improperly influence the jury's deliberations. *See Street,* 602 A.2d at 143–44.

### C.

■ Blakeney also contends that the trial court erred in allowing the government's expert to testify about the use of pagers in connection with unlawful drug distribution. Again, we cannot agree. The trial judge has "wide discretion in the admission or exclusion of expert testimony, and his [or her] decision with respect thereto should be sustained unless it is manifestly erroneous." *Griggs v.*

*United States,* 611 A.2d 526, 527 (D.C.1992) (citation omitted). This court, however, has "frequently upheld the use of expert testimony to aid the jury's understanding of drug trafficking in the District." *Id.* at 527.

■ Here, the expert testimony was necessary to explain to the jury the role that Blakeney was playing as the "money man" in the distribution of cocaine. A pager, according to the expert, is a common tool of drug sellers—a fact not commonly known. Thus, the expert "provided assistance to the jury in understanding matters beyond the ken of the average lay[person]." *Id.* at 528 (citation omitted). Like the pager itself, the expert testimony was neither evidence of "other crimes" nor of any criminal predisposition on Blakeney's part. The trial court, therefore, did not err in allowing the expert to testify as to the use of pagers in schemes of unlawful drug distribution.[2]

### D.

■ Blakeney contends, finally, that there was insufficient evidence to convict him of aiding and abetting possession with intent to distribute cocaine. He premises his argument, in part, on the inadmissability of the pager and the expert testimony. We have already concluded, of course, that the pager and expert testimony were properly in evidence. With or without that contested evidence, however, the evidence was sufficient for conviction.[3]

---

served participating in the distribution of cocaine. Thus, we have facts nowhere close to those that concerned the dissenter in *Brown.*

2. Appellant Nelson contends that he, too, was prejudiced by the admission of the pager found on Blakeney and of the expert testimony about the use of pagers in drug distribution. We do not agree. When the pager was first received in evidence, the trial court instructed the jury that it was "admitted solely with reference to [d]efendant Michael Blakeney and is not admitted and is not relevant to the [d]efendant James Nelson." Just before the jurors began to deliberate, the trial court reminded them, with reference to the pager and several other items of evidence: "You may consider such testimony only with respect to Mr. Blakeney against whom it was offered. You must not consider it in any way in your delibera-

tions with respect to Mr. Nelson." In light of the clarity of these instructions, we cannot say the admission of the pager or of the expert testimony improperly swayed the jury to convict Nelson.

3. In reviewing the trial court's denial of a motion for judgment of acquittal on grounds of insufficient evidence, we must ask whether, after viewing the evidence in the light most favorable to the government, drawing all reasonable inferences in the government's favor, and giving deference to the jury's right to determine credibility and weight, there was sufficient evidence "from which a reasonable mind might fairly infer guilt beyond a reasonable doubt." *Gayden v. United States,* 584 A.2d 578, 580 (D.C.1990), *cert. denied,* 502 U.S. 843, 112 S.Ct. 137, 116 L.Ed.2d 104 (1991); *see also Prophet v. United States,* 602 A.2d 1087, 1092 (D.C.1992).

In order to convict Blakeney of aiding and abetting possession with intent to distribute cocaine, the government had the burden of establishing that (1) the crime was committed by someone; (2) Blakeney assisted or participated in its commission; and (3) he did so with guilty knowledge. *See (George M.) Jones v. United States,* 625 A.2d 281, 288 (D.C.1993). In this case, Officer Dowd testified that Blakeney had stayed near Nelson while Nelson engaged in four "hand to hand" sales of cocaine, that Blakeney had acted as a lookout during these transactions, and that, immediately following each transaction, Nelson and Blakeney had met in front of 1814 North Capitol, at which point Nelson had handed money to Blakeney. This evidence was sufficient to permit a reasonable juror to find, beyond a reasonable doubt, that Blakeney had "knowingly aided" in the commission of the offense of possession with intent to distribute cocaine. *See Gillis v. United States,* 586 A.2d 726, 728 (D.C.1991).[4]

## III.

### A.

Appellant Nelson contends the trial court erred when it limited his cross-examination of the government's expert, Lieutenant Schmidt. Although Schmidt was present during the search of 1814 North Capitol # 3, the government called him as an expert on the drug trade, and his direct examination consisted solely of testimony concerning this expertise. On cross-examination, however, counsel for Nelson attempted to question Schmidt about his factual knowledge of the events at 1814 North Capitol in the early evening of July 26, 1992. The trial court sustained the government's objection on the ground that these questions were beyond the scope of direct examination.

Nelson now submits that he suffered "great prejudice" when he was not allowed to cross-examine Schmidt about what he had seen at the apartment. Nelson, however, had the opportunity to call Lieutenant Schmidt as a witness in Nelson's own case, which he did; and yet Nelson's trial counsel limited his questions to Schmidt's expertise, never asking him any question about what he had observed at the apartment.

More specifically, at oral argument on appeal, counsel suggested that Nelson had been prejudiced at trial, despite calling Lieutenant Schmidt as his own witness, because it had not been possible to convey to the jury, immediately after Schmidt had given direct testimony as an expert, that Schmidt had been present during the search of the apartment. We are not persuaded. Lieutenant Schmidt was the government's last witness, and the trial court made clear to the government that Lieutenant Schmidt would have to be made available for the defense to call as a fact witness. Indeed, the trial court asked appellant's counsel whether he wanted to call Lieutenant Schmidt as his own witness "now," *i.e.,* immediately following Schmidt's expert testimony on behalf of the government. Thus, Nelson had every opportunity to present to the jury without delay the fact that Schmidt had been present in the apartment during the search. Nelson's trial counsel, however, called Lieutenant Schmidt as his third, not his first, witness and, even then, questioned him solely as an expert, not about his observations at the search scene. Under these circumstances, any prejudice Nelson may have suffered was of his own making.

### B.

Nelson also contends that his sentence is illegal. Before trial, the government served enhancement papers on both the court and on Nelson's trial counsel stating that Nelson had previously been convicted of attempted distribution of PCP, a felony. The government then pointed out that, pursuant to D.C.Code §§ 33–541(c) and –548 (1993 Repl.), Nelson would be subject to a seven-year mandatory minimum sentence if convicted of a felony drug offense. Nelson

---

**4.** Blakeney argues that Officer Dowd's testimony was "seriously impeached" by discrepancies between that testimony and the notes he had taken on June 26, 1992. The jury appears, however, to have resolved any credibility issues as to Officer Dowd's testimony in the government's favor, as the jury had the right to do in weighing admissible evidence.

did not challenge these enhancement papers. At the sentencing hearing on March 11, 1993, Judge Huvelle said that she was compelled to give appellant Nelson "7 to 12 mandatory." The judgment and commitment order the judge signed on the same day recorded a sentence of "seven to twelve years," including a "mandatory minimum term of seven years." Four days later, on March 15, 1993, Judge Huvelle signed an amended judgment and commitment order, sentencing appellant to "seven to twenty-one years," "nunc pro tunc to 3/11/93." Nelson challenges this amendment.

There was no error; indeed, the longer, amended sentence was required by law. Under D.C.Code § 24–203(a) (1989 Repl.), a minimum sentence imposed for a felony conviction may not exceed one third of the maximum sentence imposed. Under D.C.Code §§ 33–541(c) and –548, the trial court was required to sentence Nelson to a mandatory seven year minimum term. In light of D.C.Code § 24–203(a), therefore, in order to sustain the mandatory minimum, Nelson's maximum term could not have been less than twenty-one years. Nothing in our case law prevents a trial judge from correcting a sentencing error four days after it was made. *See, e.g., Gray v. United States,* 585 A.2d 164, 166 (D.C.1991) ("[s]entencing is not a game and the trial court has the inherent power to correct its record so as to reflect the truth and insure that justice be served") (citations and internal quotation marks omitted).

\*     \*     \*

Accordingly, the trial court's judgment as to each appellant is

*Affirmed.*