**Gregory McFARLAND, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 01–CF–86.

District of Columbia Court of Appeals.

Argued March 31, 2003.

Decided April 17, 2003.

Jennifer Lanoff, Public Defender Service, with whom James Klein and Jaclyn Frankfurt, Public Defender Service, were on the brief, for appellant.

Gilberto Guerrero, Jr., Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher and Elizabeth Trosman, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN, FARRELL, and WASHINGTON, Associate Judges.

FARRELL, Associate Judge:

A jury found appellant guilty of one count each of distributing cocaine and carrying a dangerous weapon (a knife). On appeal the sole issue presented is whether the trial judge abused his discretion in admitting into evidence the fact that the police found $774 on appellant's person— $700 in one pocket, $74 in another—at the time of his arrest for selling two ziplock bags of cocaine. We affirm.

**I.**

Detective Austin–Braxton of the Metropolitan Police and his partner, Detective Murphy, were driving in the area of 8th and I Streets, N.W., when Austin–Braxton saw appellant exchange what appeared to be drugs for money with another individual, Gregory Hemphill. In particular, as the two men walked along in the company of a woman, Hemphill first touched some-

thing in appellant's hand and then took a small object from the hand, giving appellant money in return. As Hemphill "cupped" the object in his hand, the woman appeared to recognize the presence of the police, and she and Hemphill walked away from appellant. Austin–Braxton pursued Hemphill and, when nearly up to him, saw him throw two ziplock bags to the ground containing a white substance. Hemphill was arrested and the two discarded bags were retrieved; each held crack cocaine.

Meanwhile, Detective Murphy stopped appellant and frisked him. A moment later, when Austin–Braxton radioed Murphy that he had recovered the cocaine discarded by Hemphill, appellant volunteered that Murphy had "missed a weapon on him." Appellant reached down and removed a knife with a serrated edge from his waistband. Murphy then placed him under arrest and searched him, finding $74 in his right front pocket and $700 in his left front pocket, the latter made up of two one hundred dollar bills and multiple fifties and twenties.

Before trial appellant moved to exclude the evidence that he had $774 on him at the time of arrest. The trial judge denied the motion orally at trial, stating:

> It seems to me [the money is] directly probative of the offense charged. So I don't see ... that's even close because having money is not a crime in and of itself, it's evidentiary of the crime charged....
>
> ....
>
> [t]hat [appellant is] selling drugs right then. It's different than if they went to a bank account or something[,] then I would agree with you. Right here where the Government's evidence says

they saw him receiving money, the fact that he has money on him is of rather crucial importance.

The judge rejected appellant's alternative argument that the government's legitimate need for evidence that he had money on him at the time of alleged trafficking would be met by admitting a portion of the money, the $74, stating "they're not so limited" and that appellant could offer any innocent explanation he wanted to the jury for having the larger sum in his possession.

## II.

■ The government has conceded, understandably, that the entire $774 was not derived from the drug sale charged; and appellant was observed engaging in only a single apparent sale of drugs. In these circumstances, appellant contends that the admission of the $774 in evidence placed "pure propensity evidence" before the jury in violation of *Drew v. United States,* 118 U.S.App. D.C. 11, 331 F.2d 85 (1964), and related cases.[1] At the least, appellant argues that the prosecution should have been limited to introducing the $74 that he had in one of his pockets—an amount arguably commensurate with the sale of two bags of cocaine and much less suggestive of a general propensity than the entire $774.

Although the argument is forcefully presented, we reject it. The combined sum of money was found in appellant's pockets minutes after he was observed receiving money in exchange for objects that were inferentially the two bags of cocaine Hemphill had discarded. Under our previous decisions, the money was not "other crimes" evidence but rather circumstantial evidence of the crime charged, "inter-

---

1. "[E]vidence of one crime is inadmissible to prove *disposition* to commit crime, from which the jury may infer that the defendant

committed the crime charged," *Drew,* 118 U.S.App. D.C. at 15, 331 F.2d at 89 (emphasis in original; footnote deleted).

twined" with it and admissible "to place the charged crime in an understandable context." *Johnson v. United States,* 683 A.2d 1087, 1098 (D.C.1996) (en banc). The trial judge was required to balance the probative value of the evidence against its potential for substantial prejudice, *id.,* and on the facts of this case he did not abuse his discretion in admitting it: the money was tied immediately in time and location to the acts charged; it was not of such a quantity as practically to make any innocent explanation for carrying it incredible; and the admission of it was susceptible of a limiting instruction (unrequested by appellant) focusing the jury on its relevance to the acts alleged and not any larger issue of propensity.

### A.

This court dealt with a closely similar issue in *Bernard v. United States,* 575 A.2d 1191 (D.C.1990), although summarily. There the two defendants were observed for an hour or so selling drugs to passersby. Upon their arrest, $390 in cash was seized from one defendant and $212 from the other. Each was convicted of unlawful distribution and of possessing with intent to distribute a stash of narcotics found on a nearby ledge. One issue they raised on appeal was whether the admission of the money unfairly painted them as involved in distribution larger in scale than the handful of apparent sales the police had observed.[2] We rejected the argument, stating: "The admission into evidence of the money found on appellants tended to show that they were engaged in illicit drug sales and knew of the location of the drugs on the ledge, and was admissible in any event to place in an understandable context the

story of the crime. *Toliver v. United States,* 468 A.2d 958, 960 (D.C.1983)." *Bernard,* 575 A.2d at 1196 n. 7. The case cited, *Toliver,* had held that proof of uncharged drug sales closely related in place and time to those charged "is admissible when relevant to explain the immediate circumstances surrounding the offense charged." 468 A.2d at 960.

Substantially the same issue was considered at greater length in *Blakeney v. United States,* 653 A.2d 365 (D.C.1995). It concerned the admission into evidence of a pager device found on Blakeney's person following his arrest for possession with intent to distribute. He and a codefendant, Nelson, had been observed making four apparent street sales of cocaine from a nearby stash. Blakeney argued that the pager was irrelevant to the conduct the police witnessed and, in any event, was "predisposition evidence" that should have been excluded as more prejudicial then probative. *Id.* at 368.[3] The court rejected both arguments.

It began by reciting the standard of review of relevance determinations in a case such as this:

> "The determination of the relevance of proffered evidence is committed to the sound discretion of the trial court." *Street v. United States,* 602 A.2d 141, 143 (D.C.1992). In weighing the admissibility of particular evidence, the trial court must keep in mind that "[t]he evidence must have some connection with the defendant or the crime with which he is charged and should not be admitted if the connection is too remote or conjectural." *Burleson v. United States,* 306 A.2d 659, 661 (D.C.1973).

---

**2.** The opinion does not state the issue as defined by the *Bernard* defendants, but the court's disposition of it makes clear that this was their claim of unfair prejudice.

**3.** The court mentioned no evidence suggesting that he had used the pager in connection with the observed exchanges.

On appeal, "[a]n evidentiary ruling by a trial judge on the relevance of a particular item ... will be upset ... only upon a showing of grave abuse." *Roundtree v. United States,* 581 A.2d 315, 328 (D.C. 1990).

*Id.* The court next pointed out that, although it had not previously

> ruled directly on the relevance of a pager to the crime of possession with intent to distribute, we have repeatedly recognized that pagers are associated with the distribution of drugs. *See, e.g., Lowman v. United States,* 632 A.2d 88, 99 n. 14 (D.C.1993) (possession of money and a beeper "worth a million" as incriminating evidence) (Schwelb, J., dissenting in part); *Morton v. United States,* 620 A.2d 1338, 1340 (D.C.1993) (guns and beepers are "evidence of distribution"); *Mack v. United States,* 570 A.2d 777, 785 (D.C.1990) (evidence that defendant was carrying money and a beeper "at least highly suspicious").

*Id.* In keeping with these authorities, a police expert had explained to the *Blakeney* jury that "[a] pager ... is a common tool of drug sellers." *Id.* at 369.

Applying these principles, the court sustained the trial court's finding of relevance, pointing out that after Blakeney had assisted Nelson with "four 'hand to hand' drug sales" and received a sizeable amount of currency from him, he had been stopped and "[at] the time he was stopped ... had a pager in his pocket, as well as $690 comprised of large and small bills."[4] The court reasoned:

In light of [the police witness's] expert testimony that pagers are commonly used in the drug trade, as well as this court's recognition in previous cases that pagers are often associated with the distribution of illegal drugs, and given the fact that the pager was found in Blakeney's pocket only minutes after he had been seen receiving money from Nelson—money which Nelson had apparently been given in exchange for drugs—we cannot say the trial judge erred in finding the pager relevant to the government's theory that Blakeney had aided and abetted Nelson in the distribution of cocaine.

*Id.*

The court turned to Blakeney's alternative argument that "admission of the pager unfairly prejudiced the jury because it was 'predisposition evidence,' meaning evidence of 'other crimes'" under *Drew, supra.*[5] It concluded:

> These arguments are ill-suited to the facts of this case. The pager itself is not evidence of participation in any crime and therefore is not excludable under *Drew* .... Nor does possession of the pager inherently reflect a prior bad act similarly excludable under the extension of *Drew* explained in *Ali v. United States,* 581 A.2d 368, 375 (D.C. 1990) (citing *Jones v. United States,* 477 A.2d 231, 237 (D.C.1984)). In any event, under the circumstances of this case, the fact that Blakeney was carrying a pager does not suggest, nor was it introduced to show, that he was some-

---

4. Despite the strong unlikelihood that the four street exchanges alone had yielded the $690, Blakeney did not challenge the admission of the money in evidence.

5. The *Blakeney* court recognized that, "[l]ike relevance, the weighing of probative value against the danger of unfair prejudice 'is a decision committed to the sound discretion of the trial court.'" *Id.* at 368 (citation omitted). In *Johnson, supra,* the en banc court explained that "the evaluation and weighing of evidence for relevance and potential prejudice is quintessentially a discretionary function of the trial court, and we owe a great degree of deference to its decision." 683 A.2d at 1095.

how predisposed to distribute drugs. Rather, in this case, *the pager simply augments the picture of Blakeney as actively participating in the distribution of drugs at the time the pager was seized. Given the close temporal relationship between Officer Dowd's observations of Blakeney's acting in concert with Nelson to sell cocaine, and the nearly contemporaneous discovery of the pager and $690 in Blakeney's pocket,* we cannot say the trial court abused its discretion in finding that the pager's probative value outweighed any danger that it would improperly influence the jury's deliberations.

*Id.* at 369 (emphasis added).

### B.

■ The present case seems to us functionally indistinguishable from *Blakeney.* The $774 seized from appellant, not itself "evidence of participation in any crime," *id.*, "simply augments the picture of [him] as actively participating in the distribution of drugs at the time the [money] was seized." The key feature of the money, like the pager in *Blakeney,* is that it "was found on appellant only a few minutes after he had been observed participating in the distribution of cocaine," *Blakeney,* 653 A.2d at 368 n. 1, and thus—in words quoted approvingly by *Toliver,* 468 A.2d at 960 (citation omitted)—"complete[d] the story of the crime on trial by proving its immediate context." Moreover, since possessing it did not "inherently reflect a prior bad act," *Blakeney,* 653 A.2d at 369, appellant was free to offer the jury an innocent explanation for the possession. And, given our holding in *Johnson, supra,* that even the admission "of non-*Drew* evidence" requires the trial judge to "exercise sound discretion in passing upon a request for a

cautionary instruction that would limit the jury's consideration of that evidence to its proper purpose," 683 A.2d at 1097 n. 10, appellant was free to engage the court in crafting an instruction that would restrict the relevance of the money to whether he knowingly and intentionally distributed drugs at the time and place charged.[6] But what appellant could not compel, in light of our decisions, was withholding from the jury "the nearly contemporaneous discovery of the [money] in [his] pocket." *Blakeney,* 653 A.2d at 369; *see also United States v. McDonald,* 933 F.2d 1519, 1522 (10th Cir.1991) (pointing out that "the drug trade is a cash-and-carry business" in which cash is "the medium of exchange").

Appellant argues that *Blakeney*'s "tools of the trade" analysis should properly apply only to the crime of possession with intent to distribute (PWID), as in *Blakeney,* not actual distribution, and then only where the defendant has put his specific intent to distribute in issue. *Bernard, supra,* of course, stands in the way of that argument since the money recovered there was held relevant to the charges of both distribution and PWID. Further, although *Blakeney* was in fact a PWID case, nothing in its analysis and holding—that the pager was admissible to "augment[ ] the picture of Blakeney as actively participating in the distribution of drugs at the time the pager was seized"—implies that it would go only to proving the intent to distribute and not the actual sale. Nor do we see why that should be so. Appellant's defense was that he had only handed Hemphill a cigarette and received nothing from him in return; he thus placed both the *actus reus* and his intent to distribute in issue. Money on his person implying that he was acting for pecuniary gain en-

---

6. *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.30 (*distribution of a controlled substance*) (4th ed.1993).

hanced the picture that he was distributing drugs and not acting innocently.

Appellant also argues that the government's need to "explain the circumstances" of the crime would have been met by admission of the $74 found in his right pocket. But the prosecution's ability to show that the defendant carried substantial cash while appearing to distribute drugs cannot reasonably turn on whether the cash was held in one pocket or two. Had the $774 been found in a single roll of currency, the prosecutor would scarcely have been obliged to peel off, as it were, an arbitrary number of bills and introduce only that amount in evidence. Contemporaneous relevant proof of a crime generally need not be truncated in that way. *See Old Chief v. United States,* 519 U.S. 172, 183, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (government's legitimate "choice [is] to offer evidence showing guilt and all the circumstances surrounding the offense"). It likewise does not matter, as appellant suggests, that the police did not see into which pocket he placed the proceeds of the Hemphill transaction; it was the aggregate cash he was carrying—the tool of a "cash-and-carry business"—that helped explain whether he had sold drugs to Hemphill or was merely giving him a cigarette.

■ Finally, appellant stresses that in this case only a single apparent street sale was charged, not repeated sales or a conspiracy to distribute drugs. That may be true, but we are not persuaded to adopt— assuming our cases would let us—a "single distribution" rule barring the admission of cash (other than immediate proceeds) taken from the arrestee when only one drug

sale has been observed.[7] A categorical distinction of that kind is just as artificial as the one discussed above between cash discovered in one pocket of the arrestee or two. We can imagine a single-sale case where the sheer amount of cash recovered dwarfed in likely prejudice its relevance to explain the conduct charged—where, in other words, any innocent explanation for carrying it would be incredible to the jury. But that is not this case, and we hold that the trial judge did not abuse his discretion in admitting evidence of the $774 for its value in explaining appellant's actions, discounted by the plausibility of any explanation he offered for carrying it.

*Affirmed.*

---

7. *See People v. Ciccarelli,* 161 A.D.2d 952, 557 N.Y.S.2d 525, 526 (App.Div.1990) (where defendant is charged with "one isolated drug sale," evidence that he "possessed ... a large sum of money" at time of arrest or sale "is inadmissible"); *but see People v. Green,* 270 A.D.2d 566, 705 N.Y.S.2d 93, 95 (2000)

(where defendant was charged with single sale, evidence that he had $402—"not includ[ing] any of the alleged buy money"—on his person at the time "was relevant 'on the issue of [his] intent to sell controlled substances and supports an inference that he was a dealer' ").