**Willie E. LUCHIE, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 88–CF–571 & 90–CO–277.**

District of Columbia Court of Appeals.

Argued Jan. 22, 1991.
Decided July 7, 1992.

Mindy A. Daniels, appointed by the court, for appellant.

Carolyn K. Kolben, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Roy W. McLeese, III, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge,
FERREN, Associate Judge, and BELSON, Senior Judge.*

BELSON, Senior Judge:

A jury found appellant Willie E. Luchie guilty of one count of second-degree murder while armed, D.C.Code §§ 22–2403, –3202 (1989). Luchie contends (1) that he was prejudiced by his trial counsel's ineffectiveness; (2) that the trial court abused its discretion in allowing the government to impeach Luchie with other crimes evidence; and (3) that he was denied his Sixth Amendment right to a speedy trial. Having evaluated Luchie's first two arguments in the context of the overwhelming evidence against him, we conclude that he has failed to establish that he was prejudiced by his counsel's shortcomings and that if evidence of other bad acts was erroneously admitted any such error was harmless. As we also reject Luchie's speedy trial argument, we affirm.[1]

---

* Judge Belson was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on July 24, 1991.

1. Appeal No. 88–CF–571 is a direct appeal. No. 90–CO–277 is an appeal from a trial court's denial of Luchie's motion for relief pursuant to D.C.Code § 23–110 (1989).

## I.

We will recount the evidence in some detail because it is the strength of the government's case that defeats Luchie's principal arguments. In commencing to do so, we call attention to the dilemma in which Luchie necessarily found himself in defending against the charge of second-degree murder while armed. If he did not take the stand in his own defense, the government's virtually unrebutted case would be almost certain to prevail. If he did take the stand, he would be met with the highly incriminating statement that he made to the police shortly after the killing.

At approximately 4:00 a.m. on November 6, 1986, appellant Willie E. Luchie returned home to an apartment occupied by his common-law wife Dorothy Williamson, her four sons, and her brother Melvin Davis. Williamson testified that after she heard Luchie knock and shake the door, she ran from the bedroom and opened the door for him. Once inside the apartment, Luchie began an argument with Williamson which continued in their bedroom for approximately fifteen minutes. Although Williamson smelled alcohol on Luchie, she could understand him and noted that he had no trouble walking. Luchie then left the bedroom and went into the kitchen to get something to eat. Luchie returned to the bedroom and told Williamson that there was not enough food. Williamson accompanied Luchie back into the kitchen to show him the food she had left for him. The argument between Luchie and Williamson escalated. Luchie left the kitchen, went into the bedroom, and returned to the kitchen with one-half of a broomstick.

Nathaniel Williamson, Williamson's nineteen-year-old son, was asleep on the living room couch and eventually was awakened by the noisy argument. Nathaniel went into the kitchen when Luchie threatened to hit Williamson with the broomstick. According to Williamson, Nathaniel told Luchie "you're not going to hit my mother with that stick," and pushed Williamson out of the kitchen to stop the argument between his mother and Luchie.

Luchie and Nathaniel then began arguing. Luchie displayed a pocket knife and swung the blade toward the neck of the unarmed Nathaniel. Nathaniel jumped back. Luchie then left the kitchen, went into the bedroom, and closed the bedroom door, yet continued to argue with Nathaniel. Williamson tried to get her brother, Melvin Davis, up off the couch in the living room to intervene between Nathaniel and Luchie, while the argument between Luchie and Nathaniel went on for several minutes. While Williamson had her back to the bedroom door for a second, she heard a shot fire. She turned around, saw Nathaniel lying in the middle of the hall with a gunshot wound to his head, and Luchie holding a sawed-off shotgun with which she had previously seen him on thirty to forty occasions. She never saw a weapon in her son's hand at any time during the altercation.

Williamson's brother, Melvin Davis, was also awakened by the argument that broke out after Luchie's 4:00 a.m. arrival.[2] Davis testified that he eventually got up and knelt on the living room couch where he had been sleeping. He saw Luchie go into the bedroom, and was talking to his sister when Luchie came out with the gun. As Luchie and Nathaniel stood two or three feet apart in the hallway, Nathaniel said "[g]et the gun out of my face, man." Luchie was not "aiming" the gun at Nathaniel, but had it pointed at him. Nathaniel had no weapon in his hand. All of a sudden the gun went off. After Luchie shot his nephew, Davis grabbed a butcher knife to attack Luchie, but decided not to, he said, and threw it down near where his nephew had fallen.

Several other witnesses testified for the government. Most significant was the testimony of Silvia Comparini, a deputy medical examiner with the Office of the Chief Medical Examiner for the District of Columbia. Dr. Comparini testified as an expert in the fields of forensic pathology, toxicology, and the effect of drugs on human behavior. It was she who had per-

---

**2.** Davis was impeached with several felony convictions.

formed the autopsy on decedent. She testified that the physical evidence led her to opine that the tip of the muzzle of the shotgun was three to four feet from decedent's face when the gun was fired, and that decedent's forearms and hands were not in the vicinity of the muzzle of the gun when it was fired.

Testifying in his own behalf, Luchie stated at trial that he returned home on November 6, 1986, at approximately 4:00 a.m., and that although he had consumed three half-pints of rum, he did not think that he was drunk.[3] Luchie stated that as Williamson heated what was left of his dinner for him, he raised his voice at her for not keeping the food where her sons could not eat it. According to Luchie, Nathaniel entered the kitchen for a drink of water and told Luchie not to argue with Nathaniel's mother. Nathaniel then grinned at Luchie and pulled a knife out of the drawer, at which time Luchie took his food into the bedroom.

Luchie then stated that while inside the bedroom, he took the shotgun out of the closet and loaded it with one shell. Luchie knew that the shotgun did not have a safety, trigger guard, or stock. Luchie stated that when he stepped out of the bedroom Nathaniel was facing him. He acknowledged that when he came out of the bedroom he did not see any weapon in Nathaniel's hands. He took two steps backwards to get away from Nathaniel, and then the gun went off. He thought something had hit the gun.

In addition to three character witnesses, the defense also called Officer Joseph Masson, Jr., a technician assigned to the Metropolitan Police Department's firearms examination section. Masson qualified as an expert in firearm identification and operation. He testified that the weapon will not fire unless the trigger is moved to the rear, and that five pounds of pressure must be applied to the trigger to make the weapon discharge. He also opined that the muzzle of the firearm had to have been three feet from the decedent's head in order for it to cause a wound of the size suffered by decedent.

Following sentencing, Luchie filed a motion under D.C.Code § 23–110 (1989), through newly appointed counsel, in which he alleged that he had received ineffective assistance of counsel. After an evidentiary hearing, the trial judge took the matter under advisement and subsequently issued a memorandum order in which he concluded that Luchie had demonstrated his trial counsel's ineffective representation, but had failed to make the required showing of prejudice because "[t]he government's case was overwhelming."

## II.

Luchie challenges the trial judge's determination that although his trial counsel's representation was ineffective, it was not sufficiently prejudicial to require reversal. Specifically, Luchie contends that his trial counsel was ineffective in the following particulars: (1) she failed to prepare Luchie for trial by not reviewing with him a statement he made to Detective Fox the night he was arrested; (2) she failed to present a consistent defense; (3) she failed to qualify properly a defense witness who would have testified to the decedent's reputation for violence in the community; and (4) she failed to explore during trial evidence of past family violence and threats against Luchie by family members, evidence which according to Luchie supported his theory of self-defense.

To prevail on an ineffective assistance of counsel claim, the defendant must show (1) that counsel's performance was deficient, and (2) that such performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *accord Hill v. United States*, 489 A.2d 1078, 1079 (D.C.1985), *cert. denied*, 476 U.S. 1119, 106 S.Ct. 1980,

---

**3.** At the hearing on the motion to suppress his statement, Luchie had clarified that he had *shared the three* half-pints of rum with his uncle and others. The drinking had occurred over a period of twelve hours or more. The govern-

ment chose not to use Luchie's statement in its case-in-chief, and so informed the court before it rested. The denial of the motion to suppress is not raised on this appeal.

90 L.Ed.2d 663 (1986). The defendant does not meet the second prong of the *Strickland* test merely by showing "that the errors had some possible effect on the outcome of the trial." *United States v. Frost,* 502 A.2d 462, 463–64 (D.C.1985), *cert. denied,* 479 U.S. 836, 107 S.Ct. 134, 93 L.Ed.2d 77 (1986). Rather, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland, supra,* 466 U.S. at 694, 104 S.Ct. at 2068. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697, 104 S.Ct. at 2069; *accord Ellerbe v. United States,* 545 A.2d 1197, 1198 (D.C.), *cert. denied,* 488 U.S. 868, 109 S.Ct. 174, 102 L.Ed.2d 144 (1988).

In this instance, after reviewing the entire record, we are satisfied that Luchie has not met his burden of demonstrating that deficiencies in his trial counsel's performance made a difference in the outcome. *See Strickland, supra,* 466 U.S. at 694, 104 S.Ct. at 2068. Assuming the correctness of the trial judge's conclusion that Luchie's trial counsel's performance was deficient, we are still left with the fact that the government presented an overwhelming case. Indeed, the case against Luchie was inherently overwhelming and left scant room for the defenses Luchie's trial counsel attempted to advance, self-defense and accident.

The evidence adduced at trial by the government demonstrated that after the confrontation in the kitchen with Williamson, Luchie returned to the bedroom, loaded the shotgun, armed himself with it, carried it out of the bedroom, and had his finger on its trigger when he confronted Nathaniel and pointed the gun at him. According to Davis, the decedent said to Luchie just prior to being killed "get the gun out of my face."

Moreover, Luchie had to deal with the fact that he admittedly saw no weapon in Nathaniel's hand in the final face-off. He so testified on direct examination. Presumably, even if defense counsel had carefully gone over the events with Luchie and reviewed with him his statement to the police, Luchie would not have altered his testimony as to that fact which was so significant to his defense of self-defense. As to the defense of accident, it was so lacking in factual support that it did not merit being placed before the jury at the end of the trial.

Thus, we cannot conclude that "but for counsel's unprofessional errors, the result of the trial would have been different." *Curry v. United States,* 498 A.2d 534, 540 (D.C.1985); *accord Ellerbe, supra,* 545 A.2d at 1198. Instead, we find ourselves in agreement with the trial judge who meticulously reviewed the claim of ineffective assistance of counsel. While concluding that defense counsel's performance was indeed deficient and that Luchie had succeeded in making the first of the two showings required by *Strickland,* he explained why he did not believe that "but for counsel's unprofessional errors, the result of the proceeding would [probably] have been different." [R. at 77] He stated:

The government's case was overwhelming. Mr. Luchie's self-defense claim was wiped out by the undisputed facts in this case: after the decedent confronted him in the kitchen, defendant went into the bedroom, retrieved the shotgun, loaded it with a shell taken from a box in the closet, came back out of the bedroom, raised the gun with his finger on the trigger even though, at that point, he saw no knife or other weapon in decedent's hands, and fired. That firing, defendant claimed, was accidentally caused when decedent hit his arm (Government's Exhibit 8—defendant's statement) or, as he testified at trial, "... I thought something hit it [the gun]" (TR. 481, 518). That claim, however, was conclusively rebutted by the testimony of both the medical examiner and the firearms expert that the muzzle of the gun was at least three feet— substantially more than arm's length— from decedent's head at the moment he was shot. There was, in fact, no viable, credible defense to the charge on which Mr. Luchie was convicted.

We agree that it is improbable that even a better prepared and competently represented defendant in Luchie's position would have succeeded with a defense of self-defense or accident, or would have been found guilty of only a lesser-included offense. Accordingly, we reject Luchie's *Strickland* argument. *See Curry, supra,* 498 A.2d at 540.

### III.

■ For essentially the same reason, we find it unnecessary to analyze Luchie's argument that the trial judge abused his discretion when he allowed the government to impeach Luchie with evidence that he had pulled a gun on family members other than Nathaniel, and to introduce rebuttal evidence to the same effect. At a pretrial hearing the trial judge had concluded that the evidence in question did not fall into any *Drew* exceptions,[4] but later concluded in light of Luchie's testimony that the evidence adduced was not *Drew* evidence.

Even if we assume that the evidence was impermissible under *Drew*, we find the resulting error harmless. This is so because of the overwhelming nature of the government's case, as summarized above. In addition, any prejudice flowing from the questioning was diminished by the fact that before the challenged cross-examination took place, the jury had already heard that relationships frequently were stormy within the family's apartment, that Nathaniel had fought with Luchie on many occasions, arming himself on some of them, and that Luchie had frequently been seen with the weapon in the apartment. Having reviewed the record, we are persuaded that the jury's verdict was "not substantially" swayed by this particular evidence. *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).[5]

**4.** *Drew v. United States*, 118 U.S.App.D.C. 11, 15, 331 F.2d 85, 89 (1964).

**5.** We also reject Luchie's contention that he was denied his Sixth Amendment right to a speedy trial. The government has met its burden of setting forth credible reasons for the delay and demonstrating that it was not the result of delib-

Based on the foregoing, Luchie's conviction is

*Affirmed.*

erate footdragging. *See Barker v. Wingo*, 407 U.S. 514, 530–31, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *Lemon v. United States*, 564 A.2d 1368, 1376–77 (D.C.1989); *Graves v. United States*, 490 A.2d 1086, 1090–91 (D.C.1984) (en banc), *cert. denied*, 474 U.S. 1064, 106 S.Ct. 814, 88 L.Ed.2d 788 (1986).